IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLINTON E. CRAKER and DANA M. )
  CRAKER, )
        Plaintiffs, )
)
    v. ) Civil Action No. 11-0225
)
STATE FARM MUTUAL AUTOMOBILE )
  INSURANCE COMPANY, )
        Defendant. )

MEMORANDUM

Gary L. Lancaster,                               April 4, 2012
Chief Judge

      This is an insurance coverage action involving a dispute over payment of underinsured motorist benefits. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed a motion for partial summary judgment [doc. no. 58] seeking a ruling that there is insufficient evidence to allow the Crakers' bad faith claim to proceed to trial. State Farm has also filed a motion to strike the Crakers' bad faith liability expert report and affidavit as untimely. [doc. no. 71]. In response, the Craker's have filed a motion to modify the Final Scheduling Order to allow State Farm to depose their bad faith liability expert. [doc. no. 76].

      For the reasons set forth below, we deny State Farm's motion for partial summary judgment, but grant its motion to strike the expert report. It follows that we deny the Crakers' motion to modify the Final Scheduling Order.

I.      FACTUAL BACKGROUND

Detailed background facts relevant to this case are set forth in our prior opinions. [doc. nos. 24, 44, 52, and 57]. We include this brief summary for purposes of resolving the pending motions. Other facts may be discussed in context throughout this opinion. Unless otherwise noted, all facts are undisputed.

The Crakers were involved in a car accident on January 29, 2007 when their car was hit head on after an on-coming car swerved into their lane. Both Mr. and Mrs. Craker were injured in the accident.

Mrs. Craker, among other things, fractured her hip and required surgery followed by a multiple day stay in the hospital following the accident. Upon returning home, she was non-weight bearing for three months and required a wheelchair, a hospital bed, in-home nursing care, and other medical and work accommodations. She required numerous physical therapy sessions. She will require a hip replacement as a result of the injuries she sustained and reports that she continues to suffer pain and physical limitations as a result of the accident.

Mr. Craker, among other things, injured his knee and underwent surgery within months of the accident. The surgery was followed by physical therapy and injections at the knee. He reports that he continues to suffer pain and physical

2

limitations as a result of the injuries. He can only perform light duty work.

All medical professionals, even those hired by State Farm, agree that the injuries suffered by the Crakers were caused by the car accident, and will result in permanent physical limitations, future health problems, and additional surgeries. Mrs. Craker was 35 years old at the time of the accident. Mr. Craker was 40 years old at the time of the accident. Mr. Craker was eventually fired from the job he held prior to the accident because he could not perform the physical requirements of the position after the accident. He was, however, successful in obtaining a lesser paying, light duty job at a call center. Mrs. Craker has been able to continue her job as a principal for a cyber charter school after the accident, with limited accommodations.

The at-fault driver's insurance company, Allstate, paid each of the Crakers $100,000.00, the full limits of the applicable policy. The Crakers had an automobile insurance policy with State Farm, which included underinsured motorist ("UIM") coverage of $200,000.00 each ($100,000.00 coverage per person, stacked over two vehicles). After State Farm refused to pay the Crakers $200,000.00 each under their UIM coverage, the Crakers sued alleging breach of the insurance contract and

violation of Pennsylvania's bad faith insurance coverage statute.

State Farm originally offered to pay Mrs. Craker $7,500.00 of her $200,000.00 UIM coverage. State Farm ultimately increased its offer of coverage to $113,700.00. State Farm originally offered to pay Mr. Craker $15,000.00 of his $200,000.00 UIM coverage, which amount has increased to $66,300.00. The Crakers have refused to accept less than $200,000.00 each.

II.     APPLICABLE LAW

We have jurisdiction over this case due to diversity of citizenship, and thus, we apply the substantive law of Pennsylvania, and federal procedural law. 28 U.S.C. § 1332; Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

A. Summary Judgment Law

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all

4

reasonable inferences in that party's favor. <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007).

The burden of establishing that no genuine issue of material fact exists rests with the movant. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the non-moving party will bear the burden of proof at trial, the moving party can satisfy its burden by showing that there is an absence of evidence to support the non-moving party's case. <u>Id</u>. at 325. Once the movant has satisfied this burden, the non-moving party must demonstrate that there is a genuine issue for trial by identifying specific evidence to support its claim. <u>Id</u>. at 324.

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000) (citing cases).

B. <u>Bad Faith Insurance Coverage Law</u>

By Pennsylvania statute, an insured is entitled to monetary damages, including punitive damages, if its insurance company has acted in bad faith toward it. 42 Pa.C.S.A. § 8371. The statute does not define the term "bad faith" and the inquiry into bad faith treatment of an insured is very fact specific and depends on the overall treatment of the insured by the insurer. <u>Williams v. Nationwide Mut. Ins. Co.</u>, 750 A.2d 881, 887 (Pa. Super. Ct. 2000). To succeed in an action for bad faith, a plaintiff must show by clear and convincing evidence that the insurer lacked a reasonable basis for denying benefits and that the insurer knew or recklessly disregarded its lack of a reasonable basis. <u>Hayes v. Harleysville Mut. Ins. Co.</u>, 841 A.2d 121, 125 (Pa. Super. Ct. 2003); <u>Terletsky v. Prudential Property & Casualty Ins. Co.</u>, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997). A court must take into account the burden of proof that will apply at trial in ruling on a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 254.

III.   DISCUSSION

   A. Bad Faith Claim

State Farm contends that the Crakers cannot meet their burden to prove bad faith by clear and convincing evidence because State Farm fully investigated the Crakers' claims and had objectively reasonable grounds for its valuation decisions. [doc. no. 59 at 1]. According to State Farm, this case represents a "mere difference of opinion on value" of the UIM claim. Id. The Crakers, not surprisingly, disagree. We must determine whether the Crakers have a sufficient quantum of evidence that would permit a reasonable jury to find that State Farm lacked a reasonable basis for its evaluation, and valuation, of their claim and disregarded the same, thus defeating State Farm's motion for summary judgment. We find that they do. Without any attempt to be or representation of being exhaustive, we note that the below summarized evidence is itself sufficient to defeat State Farm's motion.

First, State Farm's valuation of Mr. Craker's lost wages bespeaks of unreasonableness, and bad faith. The Crakers submitted evidence that Mr. Craker could no longer meet the physical requirements of the job he held prior to the accident. Mr. Craker testified to the physical demands of his prior job, and his inability to meet them, his medical records reflect the physical limitations placed on Mr. Craker after the accident by

7

his doctor, and State Farm's own Independent Medical Examiner himself opined that Mr. Craker is now limited to light duty employment. But perhaps the best evidence of the fact that Mr. Craker could no longer do his job as a result of the accident is the fact that upon being released to work after his knee surgery, Mr. Craker's former employer refused to move him into a light duty position and then summarily terminated him. Mr. Craker had worked for that employer for nearly nine years before the accident, and had been regularly promoted and advanced through the company.

Mr. Craker, a man in his early forties with only a high school diploma and a specialized, technical Associate's Degree, was earning nearly $50,000 a year at that job. The Crakers have submitted evidence that Mr. Craker cannot be expected to earn such a salary in a light duty job with his educational and employment history. Yet, in the face of this uncontradicted evidence, State Farm insists that Mr. Craker could have returned to his prior position, which required him to stand and walk for up to eight hours a day, in October of 2007. This date is directly contradicted by the record evidence. For example, a February 4, 2008 report from Mr. Craker's doctor indicates that in December of 2007, Mr. Craker was only released to sedentary duty.

8

Regardless, State Farm acknowledged that Mr. Craker suffered lost wages by including such amounts in its February 2008 valuation of Mr. Craker's claim. These lost wages began on the date of the accident and continued through February 2009. They were calculated as a total loss of Mr. Craker's prior salary for that time period. After February 2009, Mr. Craker's lost wage claim was valued at $0.00. Even though various claims representatives acknowledged that future lost wages would be a component of the claim, and even though the evidence consistently and uniformly showed that Mr. Craker would be limited to light duty work for the remainder of his working life, State Farm valued Mr. Craker's lost wages as a total lack of employment for two years, followed by a return to the same type of employment he had before the accident. The record reflects no reasonable basis for this evaluation other than the claims representatives' personal opinions and experiences regarding knee surgeries. This, itself, could indicate bad faith to a reasonable jury.

Additionally, the valuation of Mrs. Craker's claim suffers from similar irregularities that could indicate bad faith to a reasonable jury. State Farm assigned values to Mrs. Craker's claim on November 15, 2007 and March 5, 2008. Neither valuation includes any future lost wages even though they acknowledge a future hip replacement and even though lost wages

9

were incurred, and valued, in connection with the minor hip surgery Mrs. Craker had immediately after the accident. Moreover, although the future hip replacement went from possible to likely between these valuation reports, the future medical costs increased only $45,000.00 to $60,000.00, to a maximum value of $100,000.00. An October 2008 report from a Rehabilitation Consultant indicated that a future hip replacement will alone cost more than $90,000.00.

State Farm has not reconsidered the value of Mrs. Craker's claim since March of 2008, even though it received that medical cost report, subjected Mrs. Craker to an Independent Medical Examination and a Statement Under Oath, and received extensive additional medical records, all of which support the extent and permanency of her injuries and the necessity of her past treatments and future surgeries. In fact, the initial values assigned to the hip fracture and multiple contusions in November 2007, presumably for pain and suffering and loss of life's enjoyment, have never changed even after a future hip replacement was deemed a certainty and even after Mrs. Craker continued to suffer additional complications and limitations as a result of the accident even a year after it occurred.

Based on the evidence, the valuation of Mrs. Craker's claim could be deemed unreasonable by a reasonable jury. A reasonable jury could find these circumstances to indicate that

State Farm was not gathering additional evidence regarding Mrs. Craker's claim in order to properly evaluate its value, but rather in the hopes of identifying a discrepancy that would support its position of offering her less than her $200,000.00 UIM coverage. When the evidence was fully favorable to the insured, and consistent with her demands, State Farm simply refused to re-evaluate the claim. We will not take the bad faith inquiry away from a jury under these circumstances.

Based on at least these grounds, we find that the Crakers have sufficient evidence of unreasonableness, knowledge or recklessness, and bad faith in order to proceed to a jury. As such, it would be improper to grant State Farm's motion for partial summary judgment.

### B. Motion to Strike and Motion to Modify

State Farm has filed a motion to strike the report and testimony of James Chett, a bad faith liability expert, because the Crakers failed to timely disclose Mr. Chett as an expert witness. [doc. no. 71]. The Crakers have opposed that motion and have also moved to modify the Final Scheduling Order to allow State Farm to depose Mr. Chett to eliminate any possible prejudice created by its untimely disclosure of Mr. Chett. [doc. no. 76]. For the reasons set forth below, we grant State Farm's motion, and deny the Crakers'.

Upon direct inquiry at the Post-Discovery Status Conference, the Crakers did not indicate that they needed any further experts to move forward with this case. [see also doc. no. 53 (minute entry of Post-Discovery Status Conference indicating no expert discovery deadlines)]. As such, the court did not establish any deadlines for the completion of expert discovery in its Final Scheduling Order. [doc. no. 54]. Notably, setting "…deadlines for completion of expert discovery…" is specifically listed in the Initial Scheduling Order as an issue to be discussed and scheduled at the Post-Discovery Status Conference. [doc. no. 22 at A(3)(1)]. Had any party indicated a need to obtain additional expert discovery, such deadlines would appear in the Final Scheduling Order.

The Crakers insist that their delay should be excused because they were not aware that State Farm would move for summary judgment on the substance of their bad faith claim. This argument, even if true, is inconsequential. The Crakers were undeniably aware that they would have to prove their bad faith claim at trial from the day they filed their complaint. The basis of State Farm's summary judgment motion does nothing to excuse the Crakers' failure to alert the Court at the Post-Discovery State Conference that they needed to retain an additional expert witness prior to trial.

12

Because the decision to exclude expert testimony on the ground that it is untimely rests within the discretion of the district court, and given the representations made to this Court at the Post-Discovery Status Conference, we will strike Mr. Chett's report, and all testimony from him as a purported expert witness. In doing so, we acknowledge that The Federal Rules of Civil Procedure permit expert disclosures to be made within ninety days of trial. FED. R. CIV. P. 26(a)(2)(D). However, here the parties told the Court that deadlines for expert discovery need not be set. We will hold them to that representation.

IV. <u>CONCLUSION</u>

For the foregoing reasons, we deny State Farm's motion for summary judgment on the bad faith claim. We grant State Farm's motion to strike. It follows that the Crakers' motion to modify is denied, as moot.

An appropriate order will be entered contemporaneously with the filing of this memorandum.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLINTON E. CRAKER and DANA M. )
  CRAKER, )
        Plaintiffs, )
         )
     v. ) Civil Action No. 11-0225
         )
STATE FARM MUTUAL AUTOMOBILE )
  INSURANCE COMPANY, )
        Defendant. )

ORDER

AND NOW, this 4th day of April, 2012, it is HEREBY ORDERED that State Farm's motion for partial summary judgment [doc. no. 58] is DENIED; and

It is FURTHER ORDERED that State Farm's motion to strike expert report [doc. no. 71] is GRANTED; and

IT IS FURTHER ORDERED that the Craker's motion to modify the Final Scheduling Order [doc. no. 76] is DENIED, as moot.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record